Joseph Burr **BARTRAM,** Mary Sheppard Bartram, Eleanor Bartram Radley, and Eleanor Bartram Radley and Joseph Burr Bartram as Executors of John J. Radley, Jr., Plaintiffs,

v.

Helen B. **GRAHAM,** as Administratrix, et al., Defendants.

**Civ. A. Nos. 5955–5958.**

United States District Court
D. Connecticut.

Sept. 30, 1957.

Cummings & Lockwood, Stamford, Conn. (Morgan P. Ames and Francis P. Schiaroli, Stamford, Conn., of counsel), for plaintiffs.

Jerome Fink, Tax Division, Dept. of Justice, Washington, D. C., Simon S. Cohen, U. S. Atty., Henry C. Stone, Asst. U. S. Atty., Hartford, Conn., for defendants.

J. JOSEPH SMITH, Chief Judge.

### Finding of Facts

1. These are civil actions which arise under the laws of the United States of America providing for internal revenue in that they seek the recovery of monies representing gift taxes assessed and collected by the former District Director of Internal Revenue for the District of Connecticut, who is represented herein by the defendants, Helen B. Graham, his administratrix, and Harold All, District Director of Internal Revenue for the District of Connecticut.

2. The plaintiff in Civil Action No. 5955 is Joseph Burr Bartram, a resident of the Town of Greenwich, County of Fairfield and State of Connecticut.

3. On or about December 26, 1950, said Joseph Burr Bartram transferred gifts of 370 shares of common stock, no par value, of Bartram Brothers Corporation to trusts for the benefit of each of his children, Nina Bartram Griswold and Joseph Burr Bartram, Jr.

4. On or about March 13, 1951 said Joseph Burr Bartram filed United States Gift Tax Return, Form 709, for the calendar year 1950, reporting said gifts of

Bartram Brothers Corporation stock therein at a value of $114.128 per share.

5. Said Joseph Burr Bartram's wife, Mary Sheppard Bartram, consented to and did report one-half of the said gifts of stock on her individual gift tax return for the year 1950.

6. Said Joseph Burr Bartram and said Mary Sheppard Bartram each reported transfers totaling $42,227.36 based on the valuation of Bartram Brothers stock at $114.128 per share.

7. At the request of the then District Director of Internal Revenue, James J. Graham, said Joseph Burr Bartram executed and filed a waiver of restrictions on the assessment and collection of additional gift tax in the principal amount of $4,746.93.

8. On or about April 29, 1954, said Joseph Burr Bartram paid additional gift tax in the principal amount of $4,746.93 together with interest thereon in the amount of $862.99.

9. On or about July 20, 1954, said Joseph Burr Bartram filed a timely Claim for Refund on Treasury Form 843 with the said District Director of Internal Revenue, claiming gift tax erroneously and illegally assessed and paid in the sum of $5,609.92.

10. The said District Director of Internal Revenue did not render any decision on the Claim for Refund before the expiration of six months from the date of filing such claim.

11. The plaintiff in Civil Action No. 5956 is said Mary Sheppard Bartram, a resident of the Town of Greenwich, County of Fairfield and State of Connecticut.

12. At the request of the said District Director of Internal Revenue, said Mary Sheppard Bartram executed and filed a waiver of restrictions on the assessment and collection of additional gift tax in the principal amount of $1,959.41.

13. On or about April 29, 1954, Mary Sheppard Bartram paid additional gift tax in the principal amount of $1,959.41 together with interest thereon in the amount of $356.22.

14. On or about July 20, 1954, said Mary Sheppard Bartram filed a timely Claim for Refund on Treasury Form 843 with the said District Director of Internal Revenue claiming gift tax erroneously and illegally assessed and paid in the sum of $2,315.63.

15. The said District Director of Internal Revenue did not render any decision on the Claim for Refund before the expiration of six months from the date of filing such claim.

16. The plaintiff in Civil Action No. 5957 is Eleanor Bartram Radley, a resident of the Town of Greenwich, County of Fairfield and State of Connecticut.

17. On or about December 26, 1950, said Eleanor Bartram Radley transferred gifts of 500 shares of common stock, no par value, of Bartram Brothers Corporation to trusts for the benefit of each of her children, Harriet Windsor, Eleanor Bartram Radley and Edith Marguerite Radley.

18. On or about March 13, 1951 said Eleanor Bartram Radley filed United States Gift Tax Return, Form 709, for the calendar year 1950, reporting said gifts of Bartram Brothers Corporation stock therein at a value of $114.128 per share.

19. Said Eleanor Bartram Radley's husband, John J. Radley, Jr., consented to and did report one-half of the said gifts of stock on his individual gift tax return for the year 1950.

20. Said Eleanor Bartram Radley and said John J. Radley, Jr. each reported transfers totaling $114,128.00 based on the valuation of Bartram Brothers stock at $114.128 per share.

21. At the request of the said District Director of Internal Revenue, said Eleanor Bartram Radley executed and filed a waiver of restrictions on the assessment and collection of additional gift tax in the principal amount of $11,005.20.

22. On or about April 29, 1954, said Eleanor Bartram Radley paid additional gift tax in the principal amount of $11,005.20 together with interest thereon in the amount of $2,000.75.

23. On or about July 20, 1954, said Eleanor Bartram Radley filed a timely Claim for Refund on Treasury Form 843 with the said District Director of Internal Revenue, claiming gift tax erroneously and illegally assessed and paid in the sum of $13,005.95.

24. The said District Director of Internal Revenue did not render any decision on the Claim for Refund before the expiration of six months from the date of filing such claim.

25. The plaintiffs in Civil Action No. 5958 are Eleanor Bartram Radley and Joseph Burr Bartram as Executors of said John J. Radley, Jr., who died after the commencement of this action. Prior to his death, John J. Radley, Jr. was a resident of the Town of Greenwich, County of Fairfield and State of Connecticut.

26. At the request of the said District Director of Internal Revenue, said John J. Radley, Jr. executed and filed a waiver of restrictions on the assessment and collection of additional gift tax in the principal amount of $10,677.12.

27. On or about April 29, 1954, said John J. Radley, Jr. paid additional gift tax in the principal amount of $10,677.12 together with interest thereon in the amount of $1,941.19.

28. On or about July 20, 1954, said John J. Radley, Jr. filed a timely Claim for Refund on Treasury Form 843 with the said District Director of Internal Revenue, claiming gift tax erroneously and illegally assessed and paid in the sum of $12,618.31.

29. The said District Director of Internal Revenue did not render any decision on the Claim for Refund before the expiration of six months from the date of filing of such claim.

30. Bartram Brothers Corporation (hereinafter referred to as the corporation) is a corporation organized in 1925 under the laws of the State of Delaware, having its place of business in the City, County and State of New York.

31. On December 26, 1950, the corporation had issued and outstanding a total of 1,370 shares of preferred stock, $100 par value, and 148,235 shares of common stock, no par value. The fair market value of its total assets as of that date was $24,788,341. The book value of its assets as of that date was $21,051,260.

32. The corporation's business has at all times consisted entirely of the investment and management of its security portfolio.

33. At all times in question the corporation was a personal holding company and not a regulated investment company under the revenue laws of the United States.

34. The corporation's stock has never been listed or traded on any recognized securities exchange.

35. Almost all of the shares of stock outstanding have been owned and held at all times by the Bartram family including descendants, relatives and spouses or by irrevocable trusts for the benefit of various family members.

36. The Bartram family control the corporation, and the corporation's directors and officers are chosen primarily from the Bartram family.

37. There have been only approximately twenty-five sales or exchanges of the stock in the thirty-two years of the corporation's existence. All such sales were of small amounts and to or from employees or their estates.

38. As of December 26, 1950 there was no apparent prospect of the corporation's being liquidated in the foreseeable future.

39.             **Bartram Brothers Corporation**
List of Stockholders
December 26, 1950

| | Preferred | Common |
|---|---|---|
| The New York Trust Company, substitute trustee for Howard P. Bartram | 1,370 | |
| Estate of Joseph Percy Bartram | | 7,200 |
| John J. Radley, Jr. and J. Burr Bartram, trustees u/deed of Eleanor F. Bartram dated June 26, 1912 for J. Burr Bartram, et al | | 5,904 |
| Rensselaer W. Bartram | | 19,650 |
| Rensselaer W. Bartram and Rensselaer W. Bartram, Jr., trustees for Florence M. Booth | | 500 |
| Rensselaer W. Bartram and Rensselaer W. Bartram, Jr., trustees for Jane Bartram Weed | | 3,880 |
| Rensselaer W. Bartram and Jane Bartram Weed, trustees for Rensselaer W. Bartram, Jr. | | 3,880 |
| Rensselaer W. Bartram and Rensselaer W. Bartram, Jr., trustees for Alice Booth Bartram | | 12,000 |
| Joseph Burr Bartram, John J. Radley, Jr. and Rensselaer W. Bartram, Jr., trustees for Mary Sheppard Bartram | | 140 |
| Joseph Burr Bartram, John J. Radley, Jr. and Rensselaer W. Bartram, Jr., trustees for Nina Helen Bartram | | 500 |
| Joseph Burr Bartram, John J. Radley, Jr. and Rensselaer W. Bartram, Jr., trustees for Joseph Burr Bartram, Jr. | | 500 |
| The Bridgeport Trust Company and Carl Foster, trustees | | 4,800 |
| King & Company | | 950 |
| The Chase National Bank and Paul Fuller, Jr. trustees for Rensselaer W. Bartram | | 10,000 |
| Kane & Company | | 10,000 |
| Harriet R. Fischlein | | 3,200 |
| Arthur W. Fox | | 3,911 |
| Arthur W. Fox, trustee | | 150 |
| William Edward Fox | | 100 |
| Jennie E. Fox | | 4,161 |
| G. William Fox | | 4,162 |
| Sigler & Company | | 6,000 |
| Eleanor Bartram Radley | | 8,000 |
| Joseph Burr Bartram | | 9,260 |
| Charlotte Pudney Hall | | 520 |
| Hazel J. Phair | | 200 |
| Harvey F. Phair | | 460 |
| Henry F. Hart | | 365 |
| Henry F. Hart, Laura R. Hart and Rupert T. Zickl, trustees U/I December 31, 1940 | | 500 |
| William Kent Pudney | | 520 |

|  | Preferred | Common |
|---|---|---|
| Eleanor B. Radley, J. Burr Bartram and John J. Radley, Jr., trustees for Harriet Windsor | | 600 |
| Eleanor B. Radley, J. Burr Bartram and John J. Radley, Jr., trustees for Eleanor Bartram Windsor | | 600 |
| Eleanor B. Radley, J. Burr Bartram and John J. Radley, Jr., trustees for Elizabeth Barttram Radley | | 600 |
| Eleanor B. Radley, J. Burr Bartram and John J. Radley, Jr., trustees for Edith Marguerite Radley | | 600 |
| Floy T. Sheldon | | 160 |
| Margaret Sheridan | | 500 |
| George E. Warren and Joseph Burr Bartram, trustees for Eleanor Bartram Radley | | 5,912 |
| George E. Warren and Joseph Burr Bartram, trustees for Winifred D. Douglas | | 800 |
| George E. Warren, J. Burr Bartram and Chase National Bank, trustees for J. Burr Bartram, et al | | 3,275 |
| George E. Warren, J. Burr Bartram and Chase National Bank, trustees for Eleanor B. Radley, et al | | 3,275 |
| George E. Warren, Rensselaer W. Bartram, Jr. and Chase National Bank, trustees for Rensselaer W. Bartram, Jr., et al | | 5,000 |
| George E. Warren, Rensselaer W. Bartram, Jr. and Chase National Bank, trustees for Jane Bartram Weed, et al | | 5,000 |
| Rupert T. Zickl | | 500 |
| | 1,370 | 148,235 |

Findings No. 40

## Bartram Brothers Corporation
### Comparative Balance Sheets—at December 31, 1943–1950
### Book Values vs. Market Values

| | December 31, 1943 | | December 31, 1944 | | December 31, 1945 | | December 31, 1946 | |
|---|---|---|---|---|---|---|---|---|
| | Book Value | Market Value | Book Value | Market Value | Book Value | Market Value | Book Value | Market Value |
| | $ | $ | $ | $ | $ | $ | $ | $ |
| **Assets** | | | | | | | | |
| Cash | 5,751 | 5,751 | 6,732 | 6,732 | 15,162 | 15,162 | 49,599 | 49,599 |
| Accounts Receivable | 193,872 | 193,872 | 186,518 | 186,518 | 653 | 653 | 548 | 548 |
| Investments: | | | | | | | | |
| Taxable Bonds | 518,230 | 480,750 | 723,556 | 681,672 | 1,120,460 | 1,140,056 | 259,760 | 204,950 |
| Partially Exempt Bonds | 2,428,658 | 2,459,177 | 2,404,456 | 2,459,465 | 1,782,552 | 1,864,625 | 1,330,675 | 1,377,750 |
| Wholly Exempt Bonds | 446,230 | 447,287 | 443,849 | 457,488 | 557,656 | 590,038 | 552,780 | 564,945 |
| Accrued Interest Thereon | 25,867 | 25,867 | 21,221 | 21,221 | 13,948 | 13,948 | 8,577 | 8,577 |
| Stocks | 11,118,488 | 11,258,619 | 11,328,101 | 12,749,656 | 13,153,055 | 16,285,983 | 14,686,175 | 16,764,758 |
| Insurance Investment | 1,012,778 | 1,012,778 | 1,009,444 | 1,009,444 | 1,006,111 | 1,006,111 | 1,002,778 | 1,002,778 |
| Total Assets | 15,749,874 | 15,884,101 | 16,123,877 | 17,572,196 | 17,649,597 | 20,916,576 | 17,890,892 | 19,973,905 |
| **Liabilities** | | | | | | | | |
| Accounts Payable | 138 | 138 | 2,146 | 2,146 | 53,100 | 53,100 | 265,753 | 265,753 |
| Reserve for Taxes | 62,932 | 62,932 | 141,751 | 141,751 | 432,939 | 432,939 | 147,894 | 147,894 |
| Capital Stock: | | | | | | | | |
| Preferred [par $100] | 137,000 | 137,000 | 137,000 | 137,000 | 137,000 | 137,000 | 137,000 | 137,000 |
| Common [no par] | 15,483,016 | 15,483,016 | 15,483,016 | 15,483,016 | 15,483,016 | 15,483,016 | 15,483,016 | 15,483,016 |
| Less—Treasury Stock | [91,720] | [91,720] | [92,720] | [92,720] | [94,720] | [94,720] | [106,666] | [106,666] |
| Surplus | 158,508 | 292,735 | 452,684 | 1,901,003 | 1,638,262 | 4,905,242 | 1,963,895 | 4,046,908 |
| Total Liabilities | 15,749,874 | 15,884,101 | 16,123,877 | 17,572,196 | 17,649,597 | 20,916,576 | 17,890,892 | 19,973,905 |
| Number of Common Shares Outstanding Less—Treasury Stock | 148,510 | | 148,500 | | 148,480 | | 148,380 | |

| | December 31, 1947 | | December 31, 1948 | | December 31, 1949 | | December 31, 1950 | |
|---|---|---|---|---|---|---|---|---|
| | Book Value $ | Market Value $ | Book Value $ | Market Value $ | Book Value $ | Market Value $ | Book Value $ | Market Value $ |
| **Assets** | | | | | | | | |
| Cash | 225,071 | 225,071 | 247,372 | 247,372 | 105,204 | 105,204 | 135,097 | 135,097 |
| Accounts Receivable | 1,579 | 1,579 | 371 | 371 | 505 | 505 | 76,325 | 76,325 |
| Investments: | | | | | | | | |
| Taxable Bonds | 1,192,313 | 1,089,656 | 1,189,626 | 1,083,266 | 923,475 | 889,012 | 1,076,844 | 1,070,981 |
| Partially Exempt Bonds | 934,376 | 905,100 | 927,080 | 920,850 | 919,785 | 958,912 | 912,490 | 947,888 |
| Wholly Exempt Bonds | 549,064 | 512,969 | 548,333 | 540,530 | 546,691 | 545,550 | 545,050 | 578,981 |
| Accrued Interest Thereon | 10,968 | 10,968 | 10,854 | 10,854 | 8,568 | 8,568 | 9,693 | 9,693 |
| Stocks | 16,381,648 | 16,971,380 | 17,145,249 | 16,719,533 | 18,086,448 | 18,961,097 | 18,915,333 | 21,969,376 |
| Insurance Investment | – | – | – | – | – | – | – | – |
| Total Assets | 19,295,019 | 19,716,723 | 20,068,886 | 19,522,776 | 20,590,676 | 21,468,848 | 21,670,832 | 24,788,341 |
| **Liabilities** | | | | | | | | |
| Accounts Payable | 186,238 | 186,238 | 401,165 | 401,165 | 214,316 | 214,316 | 163,966 | 163,966 |
| Reserve for Taxes | 514,969 | 514,969 | 250,499 | 250,499 | 235,987 | 235,987 | 318,606 | 318,606 |
| Capital Stock: | | | | | | | | |
| Preferred [$100 par] | 137,000 | 137,000 | 137,000 | 137,000 | 137,000 | 137,000 | 137,000 | 137,000 |
| Common [no par] | 15,483,016 | 15,483,016 | 15,483,016 | 15,483,016 | 15,483,016 | 15,483,016 | 15,483,016 | 15,483,016 |
| Less—Treasury Stock | [106,666] | [106,666] | [120,546] | [120,546] | [122,139] | [122,139] | [123,139] | [123,139] |
| Surplus | 3,080,462 | 3,502,166 | 3,917,752 | 3,371,642 | 4,642,496 | 5,520,668 | 5,691,383 | 8,808,892 |
| Total Liabilities | 19,295,019 | 19,716,723 | 20,068,886 | 19,522,776 | 20,590,676 | 21,468,848 | 21,670,832 | 24,788,341 |
| Number of Common Shares Outstanding Less—Treasury Stock | 148,380 | | 148,260 | | 148,245 | | 148,235 | |

Finding No. 41

## Bartram Brothers Corporation
### Comparative Statement of Profit and Loss
### for the Years Ended December 31, 1943–1950

| | 1943 | | 1944 | | 1945 | | 1946 | |
|---|---|---|---|---|---|---|---|---|
| | $ | | $ | | $ | | $ | |
| **Interest Income:** | | | | | | | | |
| Taxable Bonds | | 19,819 | | 13,872 | | 16,332 | | 28,801 |
| Partially Tax-Exempt Bonds | 70,354 | | 65,700 | | 49,364 | | 37,638 | |
| Less—Amortization of Premiums | 25,395 | 44,959 | 24,202 | 41,498 | 15,775 | 33,589 | 11,320 | 26,318 |
| Wholly Tax-Exempt Bonds | 5,438 | | 12,613 | | 13,354 | | 15,580 | |
| Less—Amortization of Premiums | 847 | 4,591 | 2,381 | 10,232 | 2,499 | 10,856 | 2,851 | 12,729 |
| **Dividends:** | | 594,102 | | 580,725 | | 611,962 | | 644,544 |
| Net Profit on Security Transactions | | 68,976 | | 446,687 | | 1,606,556 | | 435,643 |
| Income from Insurance Investment | | 33,522 | | 33,507 | | 33,532 | | 33,537 |
| Miscellaneous Interest [Federal tax refunds] | | — | | 3,841 | | — | | — |
| Other Interest | | — | | — | | — | | — |
| Total Income | | 765,969 | | 1,130,361 | | 2,312,827 | | 1,181,571 |

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| **Expenses:** | | | | | | | | |
| Salaries of Officers | 59,000 | | 59,000 | | 59,500 | | 68,000 | |
| Office Salaries | 1,225 | | 1,750 | | 2,115 | | 2,470 | |
| Legal and Technical Services | 5,100 | | 5,100 | | 13,132 | | 11,100 | |
| Expense of Officers | 10,924 | | 11,660 | | 11,276 | | 11,588 | |
| Directors Fees | 440 | | 580 | | 540 | | 600 | |
| Collection Expenses | 862 | | 789 | | – | | – | |
| Miscellaneous Taxes, etc. | 12,722 | | 17,392 | | 14,236 | | 7,320 | |
| Interest Paid | 2,812 | | 2,703 | | 767 | | 5,313 | |
| Amortization of Irrevocable Portion of Insurance Investment | 3,333 | | 3,333 | | 3,333 | | 3,333 | |
| Total Expenses | 96,418 | 669,551 | 102,308 | 1,028,054 | 104,900 | 2,207,928 | 109,724 | 1,071,847 |
| **Deduct:** | | | | | | | | |
| Provision for Federal Income Taxes | 59,382 | | 131,967 | | 420,194 | | 144,394 | |
| Less—Refund of Federal Income Taxes Relating to Prior Years | 13,486 | 45,896 | 321 | 131,646 | – | 420,194 | – | 144,394 |
| | | 623,655 | | 896,408 | | 1,787,734 | | 927,452 |
| **Deduct:** | | | | | | | | |
| Amortization of Bond Premiums for the Year Ended December 31, 1942 | | 21,501 | | | | | | |
| Net Profit | | 602,155 | | 896,408 | | 1,787,734 | | 927,452 |

| | 1947 | | 1948 | | 1949 | | 1950 | |
|---|---:|---:|---:|---:|---:|---:|---:|---:|
| | | $ | | $ | | $ | | $ |
| **Interest Income:** | | | | | | | | |
| Taxable Bonds | | 15,054 | | 32,750 | | 37,722 | | 28,690 |
| Partially Tax-Exempt Bonds | 24,067 | | 23,092 | | 23,108 | | 23,100 | |
| Less—Amortization of Premiums | 7,516 | 16,551 | 7,295 | 15,797 | 7,295 | 15,813 | 7,295 | 15,805 |
| Wholly Tax-Exempt Bonds | 13,876 | | 16,561 | | 16,588 | | 16,588 | |
| Less—Amortization of Premiums | 2,510 | 11,366 | 1,641 | 14,920 | 1,642 | 14,946 | 1,642 | 14,946 |
| **Dividends:** | | 847,958 | | 996,955 | | 1,056,579 | | 1,277,353 |
| Net Profit on Security Transactions | | 1,416,040 | | 824,506 | | 742,671 | | 1,052,416 |
| Income from Insurance Investment | | 33,417 | | — | | — | | — |
| Miscellaneous Interest [Federal | | — | | — | | — | | — |
| Other Interest | | | | | | | | |
| tax refunds] | | — | | — | | — | | 885 |
| Total Income | | 2,340,386 | | 1,884,928 | | 1,867,731 | | 2,390,095 |

| | | | | |
|---|---|---|---|---|
| **Expenses:** | | | | |
| Salaries of Officers | 68,000 | 68,250 | 70,583 | 71,616 |
| Office Salaries | 2,794 | 4,316 | 5,859 | 10,776 |
| Legal and Technical Services | 11,123 | 16,039 | 11,115 | 11,609 |
| Expense of Officers | 13,036 | 13,798 | 13,874 | 15,570 |
| Directors Fees | 560 | 2,000 | 3,000 | 3,100 |
| Collection Expenses | – | – | – | – |
| Miscellaneous Taxes, Etc. | 11,628 | 15,588 | 16,544 | 17,782 |
| Interest Paid | 8,241 | 9,449 | 7,149 | 3,629 |
| Amortization of Irrevocable Portion of Insurance Investment | 2,778 | – | – | – |
| Total Expenses | 118,160 | 129,440 | 128,124 | 134,082 |
| | 2,222,226 | 1,755,488 | 1,739,607 | 2,256,013 |
| **Deduct:** | | | | |
| Provision for Federal Income Taxes | 503,919 | 242,568 | 228,357 | 310,518 |
| Less—Refund of Federal Income Taxes Relating to Prior Years | – | – | – | 1,056 |
| | 503,919 | 242,568 | 228,357 | 309,462 |
| | 1,718,307 | 1,512,920 | 1,511,250 | 1,946,551 |
| **Deduct:** | | | | |
| Amortization of Bond Premiums for the Year Ended December 31, 1942 | – | | | |
| Net Profit | 1,718,307 | 1,512,920 | 1,511,250 | 1,946,551 |

Finding No. 42

## Bartram Brothers Corporation
### Comparative Statement of Surplus
For the Years Ended December 31, 1943–1950

| | 1943 $ | 1944 $ | 1945 $ | 1946 $ | 1947 $ | 1948 $ | 1949 $ | 1950 $ |
|---|---|---|---|---|---|---|---|---|
| Balance at January 1 | 158,626 | 158,508 | 452,684 | 1,638,263 | 1,963,896 | 3,080,462 | 3,917,752 | 4,642,496 |
| Profit for the year after providing for taxes | 602,154 | 896,408 | 1,787,734 | 927,453 | 1,718,306 | 1,512,920 | 1,511,250 | 1,946,551 |
| | 760,780 | 1,054,916 | 2,240,418 | 2,565,716 | 3,682,202 | 4,593,382 | 5,429,002 | 6,589,047 |
| Dividends Paid: | | | | | | | | |
| Preferred—6% | 8,220 | 8,220 | 8,220 | 8,220 | 8,220 | 8,220 | 8,220 | 8,220 |
| Common | 594,052 | 594,012 | 593,935 | 593,600 | 593,520 | 667,410 | 778,286 | 889,445 |
| Balance at | 602,272 | 602,232 | 602,155 | 601,820 | 601,740 | 675,630 | 786,506 | 897,665 |
| December 31 | 158,508 | 452,684 | 1,638,263 | 1,963,896 | 3,080,462 | 3,917,752 | 4,642,496 | 5,691,382 |

43. The fair market value of the common stock of the corporation on December 26, 1950 was $130 per share.

44. The payments of tax and interest referred to herein were received by the named District Dirctors of Internal Revenue in good faith in the course of their duties.

### Conclusions of Law

1. The court has jurisdiction of the parties and of the subject matter of the action.

2. The proper value for gift tax purposes, to be placed upon the common stock of a family corporation is the fair market value of the common stock at the date of the gift.

3. The plaintiffs are entitled to judgment for the portion of the amount of gift tax paid because of valuation of Bartram Brothers common stock at a value in excess of $130 per share with interest as allowed by law.

### Discussion

These are four gift tax cases consolidated for trial. The sole issue is the per share value of 2,740 shares of Bartram Bros. Corp. stock on the date of the gifts, December 26, 1950. The gift tax returns valued the stock at a 30% discount from net asset value of the corporation's underlying assets, a securities portfolio, the government assessment at the net asset value of the underlying assets. The corporation is a family holding company of considerable size. The 2,740 shares represented about 2% of the issued and outstanding stock of the company. The corporation is utilized primarily for the benefit of family trusts, whose trustees hold some 60% of its common stock and whose duration is not established, but presumably varies. Most of the individual shareholders, that is, those in the family group, are in the very highest income tax brackets.

The experts' comparisons are not sufficiently like to Bartram to establish a dependable yardstick. The evidence did establish certain elements that would be considered by investors—among them, income, expense, underlying values, probability of early liquidation, breadth of market for the shares, percentage of total shares involved. The opinions of the expert witnesses appear to give too little weight to the excellent portfolio of diversified conservative investments, at small management expense, which was in 1950 and for some years thereafter in the same hands as for many years previously. The corporation's earnings over a five year period might well be taken as a guide to value, and taken alone might justify a valuation equal to net asset value. But uncertainty of ready salability of the shares because of the minority position may well justify a substantial discount to reach fair market value, although a discount of the order of 50% as advocated by the experts appears high.

A buyer would not be confined to a bargain hunting dealer, in view of the demand by small investors for diversification, reflected in the Lehman record, and in view of the number of other Bartram shareholders of great wealth, who would naturally prefer not to have strangers to the family group as minority shareholders. In practice, since the corporation was formed in 1925 no outside sales have occurred, by family or employees.

The defendants make much of Morris' dependence on the unlikelihood of liquidation or distribution of assets in the foreseeable future. The basis of this assumption is not as clear as it might have been had the terms of the trusts been proved, but it appears a reasonable assumption in view of the 25 year history of the corporation and the apparent use of it as an instrument to conserve assets and assure income of the family trusts. The corporation itself was formed under a perpetual charter. Morris had, however, no experience in sale of stock in a family corporation of the size, established history of income, of growth and of reinvestment of capital gains of the Bartram Corporation.

Morrissey's testimony is attacked for failure to analyze the 15 companies used for comparison to determine whether

their portfolios and investment policies were comparable to Bartram's, for using a misleading projection of Bartram's net investment income and for ignoring its record of realized and unrealized capital gains. The weight to be given Morrissey's testimony is seriously affected by these defects. Massie's testimony is also of doubtful value without a fuller analysis of the individual examples contained in his two lists, to determine which are more nearly comparable to Bartram in size, portfolio, investment policies and financial history. It may be that the factor of liquidity to which he gives paramount weight is of great importance, but he has failed to give us any reliable scale relating liquidity to price in his examples, upon which we could with any confidence place Bartram.

■ The most important factors in valuing such a closely held stock in a corporation whose assets are readily marketable are the market value of the underlying assets, its record and prospects of total net earnings and its record and prospect of dividend return. Here the value of the assets per common share is $163.04 on the critical date (December 26, 1950). For the five years ending in 1950 the earnings and dividend record were as follows:

|  | 1946 | 1947 | 1948 | 1949 | 1950 |
|---|---|---|---|---|---|
| Net investment income per share after preferred dividends | 3.97 | 5.12 | 5.99 ave. 5.85 | 6.41 | 7.75 |
| Net profit per share after preferred dividends | 6.20 | 11.53 | 10.15 ave. 10.22 | 10.14 | 13.08 |
| Dividends per share | 4.00 | 4.00 | 4.50 ave. 4.95 | 5.25 | 6.00 |

■ A majority position in the stock, able to control its financial and dividend policies, might well justify a value approaching liquidation value, as of course, would a larger proportionate holding sufficient to force liquidation if desirable. In spite of the excellent record of the corporation, however, the minority position in a closely held corporation not traded in on any market would undoubtedly cause investors generally to seek a discount from liquidating values, and disposal of the number of shares here involved would require some time, effort and expense. It appears probable, however, that a buyer could be found in the family group if not outside, willing to purchase for purposes similar to the existing trusts. A fair valuation would be at a discount of approximately 20%. This results in a price approximately 13 times average earnings for the preceding 5 years or 10 times the earnings for 1950.

It appears to be the Government's contention that since the burden is on plaintiffs, rejection of the experts' valuations requires judgment for defendants. This does not necessarily follow, for there is convincing evidence that a substantial discount should be applied and the percentage arrived at although not testified to by any witness, does not appear excessive on all the factors established by the evidence.

Weighing the opinions of the experts and their weaknesses pointed out above, and the arguments of the government based primarily on liquidating value, our best estimate is that market value per share on December 26, 1950 of the stock subject of gift was $130 per share, and we so find.